UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cr-00134-FDW-SCR-34

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| vs. | ) | **MEMORANDUM OF** |
|  | ) | **DECISION AND ORDER** |
|  | ) |  |
| DRICKO DASHON HUSKEY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 3592] and the Government's Motion to Dismiss [Doc. 3667].

I.  BACKGROUND

A.  Offense Conduct

Defendant Dricko Dashon Huskey ("Defendant"), known as "Dizzy," was a member of the Nine Trey Gangsters, a "set" of the United Blood Nations (UBN) with territory in Shelby, North Carolina. United States v. Huskey, 90 F.4th 651, 661 (4th Cir. 2024). UBN sets are hierarchical with a lineup, or whip, led by – in descending order – a Godfather, High OG (original gangster), and Low OG. Id. Under each Low OG are star generals, which rank from the highest five-star general to the lowest ranking of one-star. Gang members go by gang names called "tags." Id.

The UBN's code requires its members, among other things, to follow the chain of command, defend the gang's reputation, and pay dues. Members can pay dues by selling drugs, robbing, and stealing. Members are also expected to "put in work" for the gang, meaning to engage

in "criminal activity" such as assaults, robberies, shootings, or murder, and to generally "do what [they're] told" – as part of their membership and to elevate in rank. Id.

During the conspiracy, Defendant was a five-star general under Kevin Morris, or "Kato" or "Ghost." [Doc. 2852 at ¶ 23: Presentence Investigation Report (PSR)]. When Morris went to prison in 2012, Defendant became a Low OG and oversaw the Shelby area. Huskey, 90 F.4th at 661; [Doc. 2852 at ¶ 23]. Defendant attended numerous Nine Trey gang meetings and participated in multiple "DPs" or violent gang assaults of members accused of violating gang rules. [Doc. 2852 at ¶ 23]. Defendant also participated in UBN gang violence directed towards the Crips gang, including events that involved shootings. [Id.]. Defendant dealt drugs from around 2011 through his arrest in 2016, including regularly supplying a higher ranking UBN member. Huskey, 90 F.4th at 661; [see Doc. 2852 at ¶ 24].

On August 17, 2016, Defendant murdered Donnell Murray. [Doc. 2852 at ¶ 25]. That day, Defendant confronted another individual who had disrespected a member of Defendant's family. [Id.]. Murray interceded on behalf of the individual and Defendant left. A short time later, Defendant returned. Despite Murray showing Defendant he was unarmed, Defendant shot and killed Murray. Within the UBN, personal incidents of disrespect trigger gang violence. [Id.].

B. **Criminal Proceedings**

A grand jury indicted Defendant and 82 other Nine Trey members, charging them with conspiring to participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(d). [Doc. 2623: Third Superseding Indictment (hereinafter, "Indictment")]. The grand jury charged that the UBN enterprise engaged in a pattern of racketeering activity that included multiple acts of murder in violation of North Carolina, New

2

York, and South Carolina state law; obstruction of justice; witness tampering; Hobbs Act robbery; and drug trafficking, among other activities. [Id. at 10-11]. The grand jury alleged that one of the overt acts committed "[i]n furtherance of the RICO conspiracy" was Defendant's murder of Murray on August 17, 2016. [Id. at 13, 24].

Under a Notice of Special Sentencing Factors, the grand jury charged in relation to the RICO conspiracy charged in Count One of the Indictment six acts that would support an increased sentence under 18 U.S.C. § 1963(a). [Id. at 65-67]. In the first sentencing factor, the grand jury charged that each of the Defendants agreed, "[a]s part of their agreement to conduct and participate in the conduct of the affairs of the UBN enterprise through a pattern of racketeering," that "multiple acts of murder would be committed." [Id. at 65]. In sentencing factor six, the grand jury charged that Defendant murdered Donnell Murray with malice and after premeditation and deliberation. [Id. at 66-67].

Defendant and three of his co-defendants proceeded to trial. The jury heard from former Nine Trey Gangsters members, eyewitnesses to the Defendants' offenses, law enforcement officers, and expert witnesses. [See Docs. 3156-3157, 3159-3166: Trial Trs.]. The jury convicted Defendants of each charged offense. [Docs. 2737 (Huskey), 2738 (Lewis, Jr.), 2739 (Smith), 2740 (Wray): Jury Verdicts]. The jury also found that Defendant Huskey murdered Murray as alleged in sentencing factor six. [Doc. 2737 at 1]. The jury declined to find that Defendant agreed to participate in a racketeering enterprise through a pattern of racketeering that specifically included murder as alleged in sentencing factor one. [Id.].

Before sentencing, a probation officer prepared a PSR, finding that the guidelines advised a sentence of life in prison because the underlying crimes or racketeering activities of Defendant's RICO conspiracy offense included murder, triggering a base offense level of 43 and a total offense

3

level of 46, which included a three-level enhancement for Defendant's leadership role in a criminal activity involving five or more participants or that was otherwise extensive.[1] [Doc. 2852 at ¶¶ 34, 37, 53, 55: PSR; see U.S.S.G. §3B1.1(b)]. The probation officer also found that Defendant faced a statutory maximum sentence of life in prison because his RICO offense was based on racketeering activity for which the maximum penalty included life in prison. [Doc. 2852 at ¶ 92; see 18 U.S.C. § 1963(a)].

During his sentencing hearing, Defendant argued that he was subject only to a statutory maximum sentence of 20 years in prison because the jury did not find that he engaged in a pattern of racketeering activity that included murder, that is, the racketeering activity that triggered the increased statutory maximum of life in prison. [Doc. 3171 at 5-6: Sentencing Tr.; see Doc. 2929 at 2-3: Sentencing Mem.]. The Court overruled Defendant's objection, explaining that the jury's finding that Defendant participated in a RICO conspiracy involving a pattern of racketeering activity and "further" finding that Defendant murdered Murray in relation to the UBN enterprise supported the increased statutory maximum of life in prison under 18 U.S.C. § 1963(a). [Id. at 20-21]. The Court sentenced Defendant to a term of life in prison. [Id. at 48; Doc. 2999: Judgment].

C.  **Defendant's Appeal**

Defendant appealed. [Doc. 3001: Notice of Appeal]. Defendant *inter alia* challenged his life sentence. Huskey, 90 F.4th at 674. Defendant argued that this Court could not impose a life sentence because the jury declined to find special sentencing factor one and both special sentencing factors were required to support a sentence above 20 years. Id. (citation omitted). The Fourth Circuit affirmed Defendant's life sentence. Id. at 675. The Fourth Circuit explained that "the record is clear that everyone involved understood the purpose of the special sentencing factors was

---

[1] The recommended total offense level was reduced to 43 pursuant to Chapter 5, Part A (comment n.2). [Doc. 2852 at 58].

to comply with Apprendi" and to assess Defendant's "eligibility for an enhanced sentence." Id. at 674. Defendant did not object to the Indictment or the verdict form on the ground that special sentencing factor six "was insufficiently tied to the RICO conspiracy charge." Id. The Fourth Circuit rejected Defendant's assertion that the jury found that Murray's murder had nothing to do with the RICO conspiracy. Id. at 675.

> Because the jury had to first find the defendants guilty of the RICO conspiracy offense before it could find the sentencing factors, the verdict form made clear the question presented in the sentencing factors related to the RICO conspiracy. The jury thus found the RICO violation was "based on" the racketeering activity of murder, and the district court in turn had authority to impose a life sentence. 18 U.S.C. § 1963(a).

Id. (internal citation omitted). The Fourth Circuit also rejected Defendant's argument that the jury had to answer the same way on both sentencing factors because the Indictment "gave the government two options for triggering an enhanced sentence." Id. Finally, the Fourth Circuit held that to the extent Defendant suggested that the verdict form should have been clearer or did not adequately describe what the jury needed to find to support an increased sentence, there was no plain error. Id. at 674-75.

### D. Defendant's Motion to Vacate

Defendant now seeks to vacate his sentence under 28 U.S.C. § 2255. [Doc. 3592]. As grounds, Defendant argues that this Court should have been required to list all the predicate crimes of the RICO conspiracy to support the special sentencing factors and an increased sentence. [Doc. 3592-1 at 5]. Defendant further argues that this Court's instruction "create[d]" a "fatal variance" between sentencing factors one and six and amounted to a constructive amendment because the Indictment did not charge Defendant with Murray's murder independent of the RICO conspiracy charge. [Id.]. Defendant claims this Court lacked jurisdiction to sentence him to life in prison and

5

that his sentence was not authorized by the Sentencing Guidelines or any statute. [Id. at 6]. Defendant also argues that his trial counsel was ineffective for failing to object to an improper jury instruction, a fatal variance between the sentencing factors, constructive amendment, and a defective Indictment. [Doc. 3592 at 5; Doc. 3592-1 at 5]. Finally, Defendant argues that his appellate counsel provided constitutionally deficient representation by failing to raise these "fundamental defects" on appeal. [Doc. 3592-1 at 5; see Doc. 3592 at 5].

For relief, Defendant asks the Court to vacate his "unlawful conviction" and "invalid life sentence." [Doc. 3592 at 13]. He also asks for appointment of counsel and for an evidentiary hearing. [Id.]. The Government moved to dismiss Defendant's motion [Doc. 3667] and the Defendant responded [Doc. 3671].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." to determine whether the petitioner is entitled to any relief on the claims set forth therein. Rule 4(b), foll. § 2255.

"[A] district court is obligated to hold an evidentiary hearing on a petitioner's Strickland claim '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]'" United States v. McNeil, 126 F.4th 935, 942 (4th Cir. 2025) (quoting 28 U.S.C. § 2255(b)). "Although, whether to hold a hearing ordinary is a matter of district court discretion, a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim." Id. at 942-43 (internal quotation marks and citations omitted).

6

After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Waiver and Procedural Default

A defendant "may not circumvent a proper ruling … on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam) (claims considered on direct review may not be recast "under the guise of collateral attack"). On direct appeal, Defendant challenged his life sentence based on special sentencing factor six, claiming the Court lacked authority to sentence him to life in prison because the jury never found that he murdered Murray in furtherance of the RICO conspiracy. The Fourth Circuit rejected that argument, holding that in finding Defendant guilty of the RICO conspiracy offense and answering "yes" to the sixth sentencing factor, which specifically referenced the RICO conspiracy charge, the jury "found the RICO violation was 'based on' the racketeering activity of murder, and the district court in turn had authority to impose a life sentence." Huskey, 90 F.4th at 675. Defendant here cannot circumvent that ruling by collaterally attacking his sentence on the same grounds.

Claims of error that could have been raised before the trial court and on direct appeal, but were not, are procedurally defaulted from § 2255 review unless the petitioner shows both cause for the default and actual prejudice or demonstrates that he is actually innocent of the offense. See Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United

7

States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). An act or omission by counsel constitutes "cause" for a procedural default only if it rises to the level of constitutionally ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension. See United States v. Frady, 456 U.S. 152, 170 (1982).

To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014); see also McQuiggin v. Perkins, 569 U.S. 383, 393 (2013) ("a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief."). Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." See Mikalajunas, 186 F.3d at 494.

Defendant contends that the Court improperly instructed the jury by failing to list all the predicate crimes of the RICO conspiracy to support the special sentencing factors and an increased sentence. Defendant further argues that the Court's instruction created a "fatal variance" and constituted a constructive amendment of the Indictment. Even if Defendant could show cause excusing his default, he cannot show prejudice because he has failed to identify any legal errors.

### 1. Fatal Variance

The Fourth Circuit has explained that "[i]f the district court, through its instructions 'broadens the bases of conviction beyond those charged in the indictment, a constructive amendment – sometimes referred to as a fatal variance – occurs." United States v. Banks, 29 F.4th 168, 174 (4th Cir. 2022) (citation omitted).

Here, this Court did not broaden the bases of conviction through special sentencing factor six, as Defendant suggests. Although the grand jury did not charge Defendant with a separate count of committing Murray's murder in aid of racketeering, it did allege that Defendant's murder of Murray was one of the overt acts taken "[i]n furtherance of the RICO conspiracy." [Doc. 2623 at 13, 24]. Special sentencing factor six simply asked the jury to decide whether this allegation was true such that the Court would be authorized to impose a life sentence on the Defendant for a conspiracy offense that included murder. As such, there was no fatal variance or constructive amendment here and any alleged error based thereon is dismissed.

### 2. Jury Instruction

"[T]he object of a RICO conspiracy is to engage in racketeering, not to commit each predicate racketeering act." United States v. Gutierrez, 963 F.3d 320, 343 (4th Cir. 2020) (citation and quotation omitted). The Government, therefore, "need not identify the specific racketeering acts that [a] defendant agreed would be committed." United States v. Hunt, 999 F.4th 161, 189 (4th Cir. 2024). Instead, "the Government need only prove that the defendant agreed to pursue the same criminal objective as that of the enterprise by establishing the types of racketeering acts that members of the conspiracy agreed to commit." Id. (cleaned up). A district court properly instructs the jury in a RICO conspiracy case as long as its instruction requires "unanimity as to the types of racketeering acts that members of the conspiracy agreed to commit." United States v. Cornell, 780 F.3d 616, 625 (4th Cir. 2015).

Here, the Court instructed the jury that its verdict "must be unanimous as to the type or types of racketeering activity … that the [D]efendant agreed was or would be committed, caused, or aided and abetted" and further instructed the jury regarding the racketeering activities that so qualified. [Doc. 3167 at 41, 44-54: Trial Tr.; see also Doc. 3167 at 43 ("[T]he jury must be

9

unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed; for example, at least two acts involving robbery, two acts involving murder, two drug trafficking acts, two acts of wire fraud, or any combination thereof.")]. These instructions are a proper statement of the law. Defendant, therefore, cannot show prejudice as to the Court's racketeering-acts instruction.

### 3. Defective Indictment

Defendant appears to argue that the Indictment was defective because it did not include an independent charge of murder against the Defendant. That is, he seems to argue that to support a life sentence, the Indictment must have charged him independently with Murray's murder. As noted, the Indictment charged Murray's murder as an overt act in further of the UBN enterprise. The Government had no duty to seek and the grand jury had no duty to return an indictment charging Defendant with Murray's murder in aid of racketeering as a separate count.

### 4. Actual Innocence

As to actual innocence, Defendant must "convincingly" show that he "has been incarcerated for a crime he did not commit." McQuiggin, 569 U.S. at 399; Jones, 758 F.3d at 584; see Calderon v. Thompson, 523 U.S. 538, 557 (1998) (requiring a "strong showing of actual innocence" based on finality interests) (brackets and quotation marks omitted).

Defendant here has not shown that he has been incarcerated for a crime he did not commit. Rather, the jury heard evidence that Defendant murdered Murray in furtherance of the Nine Trey organization and that he engaged in numerous acts of drug trafficking with other members of the organization. The jury also heard evidence that Nine Trey members sold drugs to pay the dues required of Nine Trey members, which also supported the larger organization. In the face of ample evidence presented at trial of Defendant's participation in the RICO conspiracy, Defendant has

10

Case 3:17-cr-00134-FDW-SCR    Document 3700    Filed 09/24/25    Page 10 of 14

unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed; for example, at least two acts involving robbery, two acts involving murder, two drug trafficking acts, two acts of wire fraud, or any combination thereof.")]. These instructions are a proper statement of the law. Defendant, therefore, cannot show prejudice as to the Court's racketeering-acts instruction.

### 3. Defective Indictment

Defendant appears to argue that the Indictment was defective because it did not include an independent charge of murder against the Defendant. That is, he seems to argue that to support a life sentence, the Indictment must have charged him independently with Murray's murder. As noted, the Indictment charged Murray's murder as an overt act in further of the UBN enterprise. The Government had no duty to seek and the grand jury had no duty to return an indictment charging Defendant with Murray's murder in aid of racketeering as a separate count.

### 4. Actual Innocence

As to actual innocence, Defendant must "convincingly" show that he "has been incarcerated for a crime he did not commit." McQuiggin, 569 U.S. at 399; Jones, 758 F.3d at 584; see Calderon v. Thompson, 523 U.S. 538, 557 (1998) (requiring a "strong showing of actual innocence" based on finality interests) (brackets and quotation marks omitted).

Defendant here has not shown that he has been incarcerated for a crime he did not commit. Rather, the jury heard evidence that Defendant murdered Murray in furtherance of the Nine Trey organization and that he engaged in numerous acts of drug trafficking with other members of the organization. The jury also heard evidence that Nine Trey members sold drugs to pay the dues required of Nine Trey members, which also supported the larger organization. In the face of ample evidence presented at trial of Defendant's participation in the RICO conspiracy, Defendant has

failed to make any showing of actual innocence. He is, therefore, procedurally barred from seeking collateral relief now based on the above claims.

**B.     Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, a petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105 (2011).

In considering the prejudice prong of the analysis, the Court "can only grant relief under … Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Defendant has failed to show deficient performance or prejudice on his claims of ineffective assistance of counsel. That is, there is no prejudice where, as discussed above, there

was no fatal variance or defective Indictment, and the jury instructions properly stated the law. Moreover, the Fourth Circuit held that in finding Defendant guilty of the RICO conspiracy offense and answering "yes" to the question posed in the sixth sentencing factor, which specifically referenced the RICO conspiracy charge, the jury "found the RICO violation was 'based on' the racketeering activity of murder, and the district court in turn had authority to impose a life sentence." Huskey, 90 F.4th at 675.

Although the adequacy of the verdict form was reviewed only for plain error, the verdict form properly asked the jury to decide whether Defendant murdered Murray in furtherance of the Nine Trey organization. The jury was first asked whether Defendant was guilty of the RICO conspiracy charged in Count One of the Indictment. After – and only after – the jury answered this question affirmatively, the verdict form asked the jury whether Defendant murdered Murray. The manner of presentation of the issues in the verdict form made clear that the questions presented in the special sentencing factors related to the RICO conspiracy offense and the jury's verdict established that Defendant's RICO conspiracy offense was based on the racketeering activity of murder.

The jury's finding that Defendant did not agree to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity that included acts involving murder is not inconsistent with its findings that the sixth sentencing factor existed. The jury was instructed that a defendant can be guilty of a RICO conspiracy offense, even if he did not agree to commit two racketeering activities, so long as he agreed that conspiratory would commit two racketeering activities. The jury, therefore, could reasonably interpret the first sentencing factor as asking whether Defendant agreed to participate in the UBN enterprise through a pattern of

12

racketeering that included one or more acts of murder alleged in the indictment in addition to Murray's murder.

For these reasons, Defendant's attorney was not ineffective for failing to challenge the verdict form or jury instructions or argue fatal variance or defective Indictment. Additionally, for the same reasons, Defendant has not shown deficient performance by appellate counsel or prejudice related to the failure to raise alleged "fundamental defects" in the proceedings. That is, there is no reasonable probability that the result of the proceeding would have been different but for appellate counsel's failure to raise the alleged claims on direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). Moreover, Defendant has failed to show that he would have been entitled to relief under Federal Rule of Criminal Procedure 52(b), which allows consideration of plain error affecting substantial rights that was not brought to the court's attention, on appeal as alleged. [See Doc. 3592 at 5; Doc. 3592-1 at 20, 25].

Because Defendant has not shown deficient performance or prejudice on these claims, the Court will dismiss them. See Strickland, 466 U.S. at 687-88, 694. The Court, therefore, will deny Defendant's request for counsel as moot. See Rules Governing § 2255 Proceedings, Rules 6(a) and 8(c).

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Defendant's Section 2255 petition and grants the Government's motion to dismiss.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 3592] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Dismiss [Doc. 3667] is **GRANTED**.

**IT IS SO ORDERED**.

Signed: September 23, 2025

Frank D. Whitney
Senior United States District Judge